UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DORIS DENISE NORRIS, INDIVIDUALLY AND AS NEXT FRIEND OF M.N., AN INJURED MINOR, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 4:16-cv-2424 |
| KAWASAKI MOTORS CORP., USA, at al., | ) ) ) | |
| Defendants. | ) | |

**KAWASAKI DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE
OF VEHICLES MANUFACTURED POST-2013 AND MEMORANDUM IN SUPPORT**

Defendants Kawasaki Motors Corp., U.S.A., Kawasaki Motors Manufacturing Corp., U.S.A., and Kawasaki Heavy Industries, Ltd. ("Kawasaki") respectfully move the Court for an order *in limine* excluding at trial any and all evidence, argument, or references to the design of vehicles manufactured and sold after 2013 (the model year of the Kawasaki Mule 4010 (KAF620) at issue in this lawsuit) including the Kawasaki Mule Pro, which was first available for the 2015 model year. Evidence regarding these post-2013 vehicles has little or no relevance to Plaintiff's design defect claim, given that Texas law looks to the time of manufacture in determining defect, making the evidence inadmissible under Rules 401 and 402. Furthermore, the risk of unfair prejudice, confusion of the issues, and delay in the trial of this case support exclusion. In support, Kawasaki states as follows:

**NATURE AND STAGE OF THE CASE**

This is a products liability case involving a 2013 model year Kawasaki Mule 4010 (KAF 620) ("Kawasaki Mule"), a utility vehicle with a maximum speed less than 25 miles per hour.

1

Plaintiff essentially claims the vehicle is defective, because it did not come standard with doors. This case is set for Docket Call on August 27, 2018.

## FACTUAL BACKGROUND

There are a number of important facts about this case that are pertinent to this motion:

1. The accident occurred when three under-aged, un-supervised and un-belted girls took the 2013 Kawasaki Mule out for a joy ride and rolled it over after making a sharp turn too fast.

2. This conduct involved several violations of the on-product warnings.

3. The subject Kawasaki Mule is a utility vehicle. Like here, it is mostly used for farm and ranch work.

4. This is the only reported rollover accident involving the Mule 4010 KAF620 in the United States.

5. The subject Kawasaki Mule is governed by Society of Automotive Engineers ("SAE") Standard J2258. Standard J2258 does not require doors on the subject Kawasaki Mule. The subject Mule complied with the requirements of the SAE J2258 standard.

6. Plaintiff's experts have not identified a single SAE J2258 vehicle that has doors.

Notwithstanding the above, Plaintiff alleges that the subject 2013 Kawasaki Mule is defective and unreasonably dangerous, because it lacked doors.

Kawasaki believes that Plaintiff will attempt to introduce evidence of vehicles manufactured post-2013, including the Kawasaki Mule Pro, to demonstrate the undisputed "feasibility" of doors.[1] In his report, Plaintiff's expert, Herb Newbold, pointed to side-by-side

---

[1]The Kawasaki Mule Pro was not only manufactured after the subject Kawasaki Mule, but its intended use and performance characteristics are also different. The Kawasaki Mule at issue is governed by SAE J2258, a set of standards developed by the Society of Automotive Engineers in the 1990s for utility vehicles based on principles contained in ANSI B56.8 "Burden and Personnel Carriers." The stated purpose of SAE J2258 "is to promote safety in the design, application, operation, and maintenance of *light utility vehicles*." (Ex. A) (emphasis added). The safety specifications in SAE J2258 "apply to any self-propelled, operator-controlled, off-highway vehicle 1829 mm (72 in) or less in overall width . . . operable on three or more wheels, primarily intended to transport material loads or people, with a gross vehicle weight of 2500 kg (5500 lb) or less, and a *maximum design speed less than* or equal to 40.23 km/h (*25 mph*)." (Ex. A) (emphasis added). *SAE J2258 does not include a requirement for doors.* The 2013 Kawasaki Mule meets or exceeds the provisions of SAE J2258, including its occupant protection standards.

2

vehicles that incorporated doors and asserted "that [a]s of 2015 Kawasaki also made a Mule that comes standard with doors." Newbold Report at 5 (excerpt attached as Ex. E). Moreover, he testified that his proposed door (for use in combination with a shoulder bolster) was "frankly modeled after the door that you used on the 2015." Newbold Depo. at 123:21-25 (excerpts attached as Ex. F). *See also id.* at 26:10-14 ("So my opinion is if at speeds around 14 miles an hour will cause this vehicle to roll over under foreseeable operating conditions, then you need to provide some occupant protection, just like you do as an example in your 2015 model.").

At the deposition of Kawasaki's corporate representative, Kazumasa Hisada, Plaintiff's counsel questioned the distinction between a Mule and Mule Pro. *See, e.g.*, Hisada Depo. at 42:1-4 ("Q. So are you telling me that a Mule Pro is not a Mule? A. Correct. Because they have to comply with totally different rules and regulations."); 42:25-43:1-12 ("Q. So it's really your testimony that a Mule Pro is not a Mule? Is that really your testimony? I can live with it. I just need you to say it. … A. Mule Pro is a Mule Pro. They have to comply with a different standard, and that a use is different from the Mule which has a top speed of 25 miles per hour. …") (objections and attorney colloquy omitted) (excerpts attached as Ex. G).

---

This includes ROPS, seat belts, hand holds, foot rests, and hip restraints for rear passengers, as well as meeting the 25 mile per hour maximum speed requirement.

    The Kawasaki Mule Pro, on the other hand, is governed by different standards and was designed for a different intended use. The Mule Pro is a larger, faster, and more powerful vehicle, with a ***maximum speed of nearly 50 mph.*** (ANSI/ROHVA and ANSI/OPEI standards govern side-by-sides with maximum speeds over 25 mph.) The Mule seats four passengers, while the Mule Pro can seat up to six. *Compare* Ex. B. (subject Mule specifications) (KMC 00050), *with* Ex. C. (2015 Mule Pro FXT specifications produced by Pl.'s expert, Herb Newbold). The Mule Pro is both longer and wider than the Mule, and the Mule Pro's engine has nearly one and one half times the power. *Id.* The Mule Pro puts out 48 foot-pounds of torque (3500 rpm) and the Mule puts out 34.7 foot-pounds (2500 rpm). *Id.* The ANSI/OPEI standard, which applies to the Mule Pro, requires different occupant protective systems. *See* Ex. D (ANSI/OPEI B.71.9-2012) at 7-9.

## ARGUMENT

I.     **EVIDENCE OF POST-2013 VEHICLES IS IRRELEVANT AND INADMISSIBLE**

Evidence of post-2013 vehicles, including the Mule Pro (first available for model year 2015) should be excluded as irrelevant under Rule 401 of the Federal Rules of Evidence. For evidence to be admissible, it must, at a minimum, be relevant. To be relevant, evidence must possess the "tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401.

Here, Plaintiff's product liability claims are governed by Texas' product liability statute, Texas Civil Practice & Remedies Code. § 82.005(a)-(b). To prevail, "the burden is on the claimant to prove by preponderance of the evidence that . . . there was a safer alternative design," which means "a product design other than the one actually used that in reasonable probability . . . was economically and technologically feasible *at the time the product left the control of the manufacturer* or seller by the application of existing reasonably achievable scientific knowledge." *Id.* (emphasis added). Accordingly, whether a product is defective is judged as of the time of its manufacture. *Id.*

This point is well-established in Texas case law, as well as federal case law applying the Texas statute. *See, e.g., Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 746 (Tex. 1980) (holding that "[w]hether a product was defectively designed must be judged against the technological context existing at the time of its manufacture"); *Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 477-78 (Tex. App. 2000) (affirming judgment for the defendant where the plaintiff lacked evidence of economic feasibility of alternative design "when the [product] was manufactured"); *Liberty Ins. Corp. v. Caterpillar, Inc.*, 2014 WL 2980275, *2-3 (W.D. Tex. July 1, 2014) (excluding Plaintiff's design expert where, *inter alia*, he relied on designs "*currently*

4

available on the market" rather than designs available at the time of the subject product's manufacture, noting that "an opinion based upon what is on the market today has the potential to mislead the jury") (emphasis in original). The Kawasaki Mule involved at issue was manufactured and sold in 2013. Accordingly, evidence concerning vehicles manufactured and sold *after 2013*, including design features in those vehicles, is irrelevant to whether the Kawasaki Mule was defective *in 2013*.

Moreover, to the extent Plaintiff intends to offer evidence of post-2013 vehicles in an attempt to establish the feasibility of doors on the 2013 Kawasaki Mule, that fact is not in dispute. Consequently, this type of evidence has no tendency to make any disputed fact more or less probable and is therefore irrelevant and inadmissible pursuant to Rule 401. Such evidence is also cumulative and prejudicial pursuant to Rule 403.[2] *See, e.g., Blythe v. Bumbo Intern. Trust*, 634 Fed. Appx. 944 (5th Cir. 2015) (affirming exclusion of evidence of later Bumbo Baby Seat that included safety harness, because feasibility was not at issue and, thus, evidence was not admissible).

## II. EVIDENCE OF POST-2013 VEHICLES SHOULD BE EXCLUDED TO AVOID UNDUE PREJUDICE, CONFUSION AND DELAY

Finally, even if evidence concerning post-2013 vehicles were relevant to Plaintiff's claims, its minimal probative value is substantially outweighed by the risk of creating unfair prejudice, confusing or misleading the jury, undue delay, or wasting time. Fed. R. Evid. 403. As discussed above, evidence of vehicles manufactured or sold after the 2013 Kawasaki Mule has little, if any, probative value on the core elements of Plaintiff's claims under Texas law, which

---

[2] Rule 403 permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

requires defect at the time of manufacture. However, allowing evidence of post-2013 vehicles, including the 2015 model year Mule Pro, will lead to unfair prejudice against Kawasaki.

In particular, because the 2015 Mule Pro includes a door pursuant to the requirements in the applicable ANSI/OPEI standard, and the subject Mule, governed by SAE J2258, does not, evidence regarding the 2015 Mule Pro creates a substantial risk that the jury will perceive the addition of the door to the 2015 Mule Pro as an admission that doors are either desired by consumers or necessary for safety. Thus, such evidence injects unfair prejudice and obvious potential for jury confusion.

Moreover, evidence of post-2013 vehicles, including the 2015 Mule Pro, will unduly delay the trial and waste judicial resources. Kawasaki would be forced to explore, impeach, and rebut evidence of post-2013 vehicles with evidence showing why such vehicles were designed differently from the 2013 Kawasaki Mule. *Uitts v. General Motors Corp.*, 411 F. Supp. 1380, 1383 (E.D. Pa. 1974) aff'd 513 F.2d 626 (3rd Cir. 1975) (defendant must be afforded the opportunity to do so); *Becker v. American Airlines*, 200 F. Supp. 243, 245 (S. D. N. Y. 1961) (same). Forcing the jury to work through these types of complex and varied issues solely to establish an issue that is not in dispute is simply beyond the scope of admissible evidence pursuant to Rules 401 and 403.

## **CONCLUSION**

Based on the foregoing, Kawasaki respectfully requests that the Court exclude from trial any and all evidence, arguments, or comments concerning vehicles manufactured or sold after 2013, including evidence, arguments, or comments regarding the model year 2015 Mule Pro.

Respectfully submitted,


By <u>/s/Richard A. Mueller</u>
THOMPSON COBURN LLP
Richard A. Mueller (*pro hac vice* and attorney-in-charge)
Heather F. Counts (*pro hac vice*)
505 N. 7th St.
One US Bank Plaza, 63101
T: (314) 552-6000
F: (314) 552-7000
<u>rmueller@thompsoncoburn.com</u>
<u>hcounts@thompsoncoburn.com</u>

Jeffrey S. Hawkins
GERMER, BEAMAN & BROWN, PLLC
State Bar No. 09249100
301 Congress Avenue, Suite 1700
Austin, Texas 78701
T: (512) 472-0288
F: (512) 482-3520
<u>Jhawkins@germer-austin.com</u>

*Attorneys for Defendants*

## CERTIFICATE OF CONFERENCE

Defense counsel certifies that they have conferred with Plaintiff's counsel, Scott West, regarding the instant Motion, and the parties could not reach an agreement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded on this 17th day of August, 2018, via email to:

| | |
|---|---|
| S. Scott West | Richard P. Hogan, Jr. |
| The West Law Firm | Hogan & Hogan |
| 1600 Highway Six, Suite 450 | 711 Louisiana, Suite 500 |
| Sugar Land, Texas 77478 | Houston, TX 77002 |
| scott@westfirm.com | rhogan@hoganfirm.com |

*Attorneys for Plaintiff*

*/s/ Richard A. Mueller*
Richard A. Mueller