IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DORIS DENISE NORRIS, INDIVIDUALLY AND AS NEXT FRIEND OF M.N., AN INJURED MINOR, Plaintiff | § § § § § | JUDGE LEE HYMAN ROSENTHAL |
| V. | § § § | CIVIL ACTION NO. 4:16-CV-2424 |
| KAWASAKI MOTORS CORP. U.S.A., ET AL. Defendants | § § § | |

**KAWASAKI DEFENDANTS' BENCH BRIEF IN RESPONSE
TO PLAINTIFF'S ARGUMENTS REGARDING
ADMISSIBILITY OF INDUSTRY STANDARDS AND CPSC ACTIONS**

The Kawasaki Defendants submit the instant response to Plaintiff's Memorandum regarding the admissibility of industry standards and CPSC regulatory actions.[1]

**A.    Industry Standards and Government Regulations Have Been Undeniably Front and Center in Plaintiff's Case**

Plaintiff's argument that industry and CPSC standards are irrelevant to the question of whether a product is unreasonably dangerous is incredible, given the fact that within the first *30 seconds* of Plaintiff's counsel's opening argument, he told the jury: "This defect was born 14 years before Ms. Norris …". It was born and raised with *no standards, no real standards … .*"

---

[1] Plaintiff's Memorandum (Doc. 135) addressed both admissibility of evidence of the absence of other accidents and admissibility of industry standards and "CPSC Regulatory Responses." Kawasaki's Bench Brief Regarding Admissibility of Absence of Other Mule 4010 Rollovers (Doc. 137) responds to Plaintiff's arguments regarding admissibility of absence of other accidents. Accordingly, this brief is limited to the admissibility of industry standards and CPSC actions.

10/2/18 Trial Tr. (rough) at 11:8-10; *see also id*. at 14:17-18 ("So it was born and raised with no real standards and we will talk about standards.").[2] In fact, Plaintiff's counsel put up a demonstrative slide during his opening with the words "**NO STANDARDS**" in large, bold, red font. If standards are not relevant, leading his opening statement with "**NO STANDARDS**" seems like a poor use of his time to communicate with the jury about the evidence. Moreover, Plaintiff's counsel transition straight from "**NO STANDARDS**" to a purported "Industry Agreement" implying that "**NO STANDARDS**" were the result of collusion by the industry[3] also makes no sense, if the purported "**NO STANDARDS**" situation and an alleged "Industry Agreement" regarding "**NO STANDARDS**" are irrelevant to Plaintiff's product defect case. Plaintiff followed up this apparently irrelevant theme with his first witness, Mr. Newbold, mentioning standards approximately 15 times during his direct examination and repeatedly characterizing standards as "Industry Agreements." *See id*. at 54-152.

What's worse is that Plaintiff is attempting to prevent Defendants from clearing up the false statement that her counsel put into the record. On re-direct exam, Plaintiff's counsel

---

[2] Rough transcript excerpts attached as Exhibit A.

[3] *See id*. at 11:11 (referring to industry standards as "industry agreements upon which this vehicle was developed"); *id*. at 14:18-24 ("So, the five major manufacturers of these side-by-sides got together, Kawasaki, Polaris, Yamaha, Suzuki and Honda they gathered and they say okay, what are the guidelines we are going to build these things with. … Let's not do doors, nets, let's not do nets, shoulder [bolster] let's not do that."); *id.* at 15:3-4 ("There is no real rules. There is no real standards. … It's the industry agreement."). Aside from the fact that this testimony illustrates the lack of merit to Plaintiff's motion requesting exclusion of evidence of CPSC and standards, Plaintiff's arguments regarding an "industry agreement" to avoid standards violates the stipulation filed with the Court that expert testimony regarding state of mind and intent is inadmissible (Doc. 95), and the Court's ruling that Defendants' *Noerr-Pennington,* First Amendment activities in front of all three branches of government are inadmissible as a basis for liability in this case. (Doc. 92, granting Defendants' MIL).

elicited false testimony in front of the tribunal, when he asked Newbold:  "Q.  Does the CPSC have jurisdiction over [the] MULE?" to which Newbold answered:  "No."  *Id*. at 259:10-12.

Plaintiff's counsel or someone acting at his direction *reported the rollover in this case to the CPSC*.  *See* CPSC Report #20170714-BDB17-2147398977 (attached as Exhibit B) (reporting an "8/12/14" event regarding a 2013 Kawasaki Mule 4010, "12 year old female passenger (right, rear seat)" "My Relationship to the Victim, *My Client* … .") (emphasis added).

The CPSC *has jurisdiction* over "consumer products," which are broadly defined in 15 U.S.C § 2052(a)(5) as articles sold to a consumer for use in or around a residence, in recreation, "or otherwise."  Mules are not excluded from the definition of "consumer products," because they are not intended for use primarily on public streets and highways.  15 U.S.C. § 2025(a)(5)(C) (excluding "motor vehicles" only to the extent such vehicles are governed by the Motor Vehicle Safety Act, 49 U.S.C. § 30102(a)(6) and (7)).  Moreover, the recall of UTVs obviously demonstrates the CPSC's jurisdiction over the product.  *See*, *e.g*., United States Consumer Product Safety Commission, "Polaris Recalls Gravely Utility Vehicles Due to Fire and Burn Hazards (Recall Alert)":



available at https://www.cpsc.gov/id/Recalls/2018/Polaris-Recalls-Gravely-Utility-Vehicles-Due-To-Fire-and-Burn-Hazards-Recall-Alert (last visited October 3, 2018).

Given the *enormous* risk of unfair prejudice that Plaintiff introduced into the case with Newbold's false testimony regarding CPSC jurisdiction, Kawasaki should be able to put on evidence necessary to clarify the role of standards and government regulation regarding the Mule.

**B.  Plaintiff's Mischaracterization of the Applicability of Standards and CPSC Jurisdiction, as well as Federal Case Law, Make the Evidence Admissible**

Given Plaintiff's fixation on the purported lack of standards ("**NO STANDARDS**") for the Mule, purportedly obtained by "Industry Agreement," Plaintiff's case law regarding the inadmissibility of CPSC regulatory action is inapposite. In *Vitale v. Electrolux Home Prods., Inc.*, 2018 WL 3868671 (E.D. Pa. Aug. 14, 2018), the district court for the Eastern District of

Pennsylvania granted a motion *in limine* (expressly stating that the Court "may revisit the ruling"), because while relevant, there was at best "an intermediate evidentiary 'payoff' for what should be the focal point of the trial: whether the product was defective." *Id.* at *2. In the instant case, the "evidentiary payoff" is far more than intermediary, because Plaintiff has in fact made the purported lack of industry standards and government oversight (which is demonstrably false) the "focal point" of her defect case. Consequently, under the Rule 403 balancing test, the high probative value of the evidence far outweighs any risk of prejudice (in particular, because Plaintiff brought such prejudice on herself). Moreover, case law such as *Cummins v. BIC USA, Inc.*, 727 F.3d 506 (6th Cir. 2013), explains that the enabling statute (15 U.S.C. § 2074(b)) relied on by Plaintiff, excludes evidence only where there is a "*complete failure* to engage in activity on a product." *Id.* at 513-514. Plaintiff has no evidence of a complete failure to act on the part of the CPSC regarding UTV vehicles or the Kawasaki Mule.

      **C.**      **Plaintiff Interjected the Role of Industry Setting Bodies and the CPSC regarding ROHVA Vehicles**

Plaintiff's brief argues that Newbold's impeachment with his deposition testimony that the CPSC had "blessed" the ROHVA standards is "manifestly unjust." Plaintiff's objection is improper, because Newbold's testimony regarding the CPSC's "blessing" of ROHVA standards was admissible impeachment with a prior inconsistent statement, going directly to Newbold's credibility. Furthermore, Plaintiff's examination of Newbold was not limited to UTVs, but included ROVs, as well. *See*, *e.g.*, 10/2/10 Tr. (rough) at 84:6-8 ("Q. Have you done reconstructions of UTVs and ROVs before? A. Yeah. Many, many."). Additionally, Newbold, himself incorrectly and repeatedly conflated ROVs, UTVs, and ATVs in his answers on cross-examination, especially in his attempt to classify ROVs and UTVs as the same vehicle, claiming that he could not understand the difference. *See*, *e.g.*, *id.* at 158:9-11 ("Q. Of those 50, let's take

[sic] about the ROVs first.  Did any of those ROV cases, did you testify on behalf of the manufacturers?  A.  I don't use – I'm not sure what you're using as a term ROV … ."); 165:5-9 ("Q.  Now, about the side-by-side business.  I want to clarify that.  If I looked up that Teryx there you are going to call it a side-by-side aren't you?  A. Yeah.  Look it up on Kawasaki's own web page."); 166:14-22 (Newbold could not answer the question referring to ROVs and UTVs, because "I don't understand those terms").  If ROVs and UTVs are all the same to Newbold, Plaintiff can hardly complain when Newbold is cross-examined regarding a ROHVA standard related to ROVs.

>    D.    **Plaintiff's Preemption Argument is a Red Herring**

Finally, Plaintiff's argument that evidence of industry standards or CPSC regulations are not "determinative" on the issue of product defect completely misses the point.  As this Court ruled, industry standards are relevant to defect, but not determinative, and Defendants have never argued otherwise.  *See* 9/4/18 Hearing Tr. at 26:18-20 ("Mr. Mueller:  It's an SAE standard, and I think there are a lot of cases of SAE standards, and industry standards are admissible.  He says they are not a defense, and I agree.") 27:19-24 ("The Court:  … The argument is that the fact that everybody does it, and that that was the prevailing design in the market for these kinds of vehicles, is not irrelevant to establishing industry practice as a – as probative evidence.  It is not the only proof.  It is not determinative.  No one is arguing that.  But it is relevant.  I'm going to deny the motion in limine.") (excerpts attached as Exhibit C).  Given that neither the Court nor Defendants have taken the position that compliance with or evidence of an industry standard is outcome determinative regarding existence of a product defect, Plaintiff's reliance on federal preemption case law, such as *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475 (Tex. 2010), has no import.

In light of all of the foregoing, Kawasaki asks that the Court deny Plaintiff's motion for reconsideration regarding the admissibility of industry standards and the admissibility of CPSC regulation, and affirm the Court's ruling that evidence regarding industry standards setting bodies and the CPSC is relevant and admissible in this case.

Respectfully submitted

By */s/ Richard A. Mueller*
Richard A. Mueller (*pro hac vice* and attorney-in-charge)
Heather F. Counts (*pro hac vice*)
THOMPSON COBURN LLP
505 N. 7th St.
One US Bank Plaza
St. Louis, MO 63101-1693
Telephone: (314) 552-6084
Telefax: (314) 552-7000
E-mail: rmueller@thompsoncoburn.com
E-mail: hcounts@thompsoncoburn.com

-and-

Jeffrey S. Hawkins
State Bar No. 09249100
GERMER BEAMAN & BROWN, PLLC
301 Congress Ave., Suite 1700
Austin, Texas 78701
Telephone: (512) 472-0288
Telefax: (512) 472-0721
E-mail: jhawkins@germer-austin.com

**ATTORNEYS FOR DEFENDANTS**

CERTIFICATE OF SERVICE

I hereby certify that, on the 4th day of October, 2018, I caused to be electronically submitted the foregoing document with the clerk of court for the U.S. District Court Southern District of Texas, using the electronic case files system of the Court. I hereby certify that I have caused all counsel of record to be electronically served via the Court's CM/ECF system

*/s/Richard A. Mueller*
Richard A. Mueller